May it please the Court, I'd like to reserve three minutes. I'm Paul Blavarnik for Appellant Jeff Denny. Your Honor. Counsel, let me ask you a question. Yes. It looks to me as though we don't have to resolve the question whether to apply but-for causation or substantial factor causation because under the findings that the judge made after trial, it wouldn't make any difference. And when I look at those findings, pages 84, 85, 86, I don't really see how this guy can get to first base. The question is, was he fired for asking for leave or was he fired for his inappropriateness swearing at his boss and challenging him to a fight? And the case went to trial and we've got a finding of fact that it was the latter. Your Honor, we disagree. We disagree with the legal analysis of the district court for this reason. But let's say that he's wrong. Why would it matter? Why did that finding of fact? Let's say he's wrong on but-for causation. A substantial factor would be enough. If I read his findings of fact correctly and you point me to the words in the excerpts if I'm reading them wrong, his asking for the leave was not a substantial factor in getting him fired. It was just swearing at his boss and challenging him to a fight. As a matter, Your Honor, or Your Honors of both law and fact, that conclusion is wrong. I think that the error that the district court made was to apply the same kind of analysis to this case as it would to, for example, a Title VII case in which there were a number of different reasons for the termination. But in this case, the only thing that the dispute was about, the only thing, was whether my client was entitled to leave. Yeah, but that's not why he was fired. The lesson seems to be don't cuss out your boss and challenge him to a fight. It doesn't matter what led you to cuss out your boss and challenge him to a fight. Well, I anticipated that question, Your Honor. With due respect, I don't agree with either the question or the answer. The undisputed evidence in this case, and the court so found, was that Mr. Denny was wrongfully denied leave and that he was fired as a result of his opposition for leave. The district court concluded that the language that it thought that Mr. Denny had used basically protected the railroad from the consequences of their repeated refusal to allow a leave which the court had found they were bound to apply. Look, we're talking past each other here. Take a look at excerpts of record, page 85, lines 13 through 20. Your Honor, I don't have the excerpt in front of me, but I have the opinion of the court. The findings of fact and conclusions of law, page 12. Right. You didn't bring your excerpts? Well, I do have the opinion in front of me, and I'm looking at the second paragraph. I don't know if you mean the same thing by opinion that I mean by findings of fact and conclusions of law. Yes, and I'm looking at that. Okay. It says that there was no negative reaction to the leave request or anything previous. Despite the boss's unhappiness about leave, there was no retaliation. It was just cussing out his boss and challenging him to a fight. Well, the retaliation hadn't occurred. The undisputed evidence at trial was that having asked for the leave and, in fact, being unable to work safely because of his physical condition, he was subject to discipline. Wait. This is not a summary judgment appeal. This is a case that went to trial. So show me... Not all the matters went to trial. Not all the movements, not all the causes of action went to trial. That's correct. The Oregon claim... This one did, didn't it? Yes. The Family Medical Leave Act claim went to trial. The OFLA claim did not. Show me the words that I'm misunderstanding here. The court's failure to account for the fact that the railroad had essentially turned the Family Medical Leave Act on its head and used it as a sword instead of allowing it to be a shield for the plaintiff is implicit in its finding, Your Honor. Did you say any of the findings were clearly erroneous? I don't remember... We did. And the findings that were erroneous, given the rule that in a case involving a subjective application of its own rules that the court has to examine extremely carefully, the assertions of a defendant in this case, I would say the findings were erroneous. To begin with, the defendant's response to the repeated request for leave were per se. By definition, they weren't reasonable. The fact that... Just because... Let's assume that you're right, that the response to the leave request was incorrect, that leave should have been granted, period. That seems not to matter because you're not asking for leave in this case. You're challenging the termination. So they can be wrong about the leave and not liable for the termination if the termination results from something else. And I think that's what Judge Kleinfeld's questions and mine are getting to. Because the finder of fact listened to all this and said it wasn't even a negative factor, this request for leave. It was the fact that he got into this heated exchange with his supervisor that precipitated the termination. And I understand that you say that that's a clearly erroneous finding, but if you lose on that point, I don't see how you can win. Your Honor, the dispute from start to finish concerned the denial of the leave. This plaintiff, without any dispute from the defendant, as soon as he made the There were only two requests. His was the only one that was actually denied. He was then, he was in danger of being fired from the beginning. He could no longer refuse the call. He couldn't mark off sick, wasn't given the opportunity to mark off sick. So if he went to work, he was going to be disciplined. If he didn't go to work, he was going to be this plaintiff could challenge its illegal act, which put him in an absolutely untenable position. And that is the fatal flaw with respect to the court's, the district court's decision. That is that the defendant created, in effect, a situation from which the plaintiff could not emerge without being fired or otherwise disciplined. Except that's not what the district court found, that he was not in danger of being fired when he asked for, when he asked for the leave, when he asked to have the denial explained, when he asked for the denial in writing, when he spoke to his union rep about it in front of the supervisor, or when he told the supervisor he wouldn't work. The district court said that the firing did not relate to any of those things, only to this heated confrontation. So what the district court didn't make any findings about the jeopardy that the defendant had placed the plaintiff in. The defendant's own officials testified that he would have been disciplined. Let me give you a hypothetical. Sure. To see if I understand your answer. I had reserved some time, your honor. I guess I'm going to run through that. Suppose a man asks for sick leave. The employer turns him down. The employer is just totally wrong. Has no excuse for it. Just wrong. Should have given him the sick leave. The employee gets mad and punches his boss in the nose. If I understand your argument right, his termination for punching his boss in the nose would be a violation of the act. Oh, absolutely not. No, no, no. I don't agree. I don't agree that claiming rights under the Family Medical Leave Act shields somebody from criminal liability, but that's not the termination. Well, I understand that. I would, I guess I would say that the Family Medical Leave Act does not give somebody the right to punch somebody in the nose. I mean, that's, that's a criminal act. Why does it give somebody the right to cuss out his boss and challenge him to fight? Well, apparently nobody, nobody felt, nobody said that that was a, that that was wrong. Well, that's correct. Everybody, everybody says that's the accepted thing we do in the real world. That's correct, your honor. The difference between the accepted level of obscenity on the railroad and what the plaintiff was found to have said by the court, the court didn't actually make that finding. Cussing out your boss is another. Well, people could, he, the boss testified, forgive me, that Mr. Denny could have said to him without any fear of repercussions, the fuck you are, as opposed to fuck you, which is a difference presumably discernible to the district court, but it's not a great difference. Moreover, the defendant himself, Mr. Ritter, the defendant's officer engaged in activity that without any contradiction was deemed to be a grounds for termination, namely putting his finger in Mr. Denny's face. The, the officer who had not asked for leave but was opposing the legitimate request for leave was not punished. Mr. Denny, who did not physically ever approach the officer, was punished and he was the one who had asked for leave. So I think the court's factual legal analysis was incorrect, even though I don't, I mean, I'm willing to, although I don't agree with the factual findings of the court and I don't have the time to explain why, its analysis nevertheless is unsupported by the law and not consistent with the facts. Thank you, counsel. Thank you, counsel. We ran you over, I realize that, so we'll give you another 30 seconds in case it comes up that you need rebuttal for. Counsel? Good afternoon. May it please the court, I'm Kirk Peterson, appearing on behalf of Union Pacific Railroad Company. Unless the court has any threshold questions, there's two issues that I'd like to, given our time frame having been shrunk, there's two issues that I'd like to concentrate on today and that's the first issue is the fact that the court, the trial court, did not make a determination of whether the plaintiff said F you or the F it's not. The plaintiff has made a large issue of that. We believe it's immaterial and I'll come back to that. The second major issue I'd like to address is plaintiff's new argument that the use of profanity in asking his boss if he wants to step outside are themselves protected activity under the Family Medical Leave Act as a matter of law. Unless the court has any questions, I'll address each of those issues. The plaintiff in his opening brief made a large to-do about the absence of... You know, of course, you don't waive anything, everything you argued in the brief, it's preserved. Absolutely, but the plaintiff has made a big to-do about the absence of a finding on whether the plaintiff actually said F you or the F you're not and take it outside. There's two reasons why that absence of a finding is absolutely immaterial. The first is that it's always been the plaintiff's burden of proof to show causation in this matter and that is that his prior use of family medical leave was at least a negative factor in his termination decision. It was never the Union Pacific's burden of proof at trial to show that he said one use of profanity versus the other. It was plaintiff's burden of proof to show that it was a negative factor at a minimum, a negative factor in the decision-making process. He failed to make that burden of proof. Is there still that burden of proof in summary judgment matters? Who has the burden of proof when there's a summary judgment? There is no burden of proof, is there? The burden of proof would be on the party, but it depends on who's the moving party and what's the matter. The good issue is the fact that nobody wins. But this was a trial. You can't grant summary judgment when the disputed issue is a fact. So whoever has the burden is immaterial because there is no burden. If you have the burden, but this is a trial court finding. Am I right in motions for summary judgment there is no rule as to who has the burden of proving something because if there are disputed issues of fact, you cannot get summary judgment. Is that right or wrong? That's correct. But this is a post-trial fight appeal. The issue of whether the firing was caused by the request for leave or by cussing out his boss and challenging him to a fight get resolved on summary judgment or did it get a finding of fact after trial? It was a finding of fact after trial. It was a four-day trial. The FMLA questions were the interference claim and the retaliation claim. Both of those went to trial. Both of those went to trial on the merits. It was a different issue that was decided on summary judgment and that's whether there was a cause of action for retaliation under Oregon law. Yes, counsel, I want you to assume for the moment that the trial court was wrong about that. That there is, following Yeager, a claim that's viable under the Oregon statute. In the particular circumstances of this case, would that make any difference? In other words, once the finder of fact, having heard the evidence, says the firing was because of A and not because of B, would the error be harmless or not? We certainly submit that it would be a harmless error, even if there is a cause of action. We think that there isn't one, but even assuming your question, to assume that the trial court was wrong on that, he found correctly that taking leave and asking for further leave was not even a negative factor. So even under the causation standards under Oregon law, the result wouldn't be any different. I know that opposing counsel has only 30 seconds of grace on rebuttal, but I'd appreciate an answer to that question about Yeager and harmless error from your perspective when you had that chance. Well, the second reason that I'd argue that the plaintiff's precise use of profanity was immaterial is that the Good Faith Honest Belief Doctrine does apply here. Do we have to use the rationales that you're articulating, or is there some reason why we can't just go with what the district judge said? Is it about why it's immaterial? I think the district court articulated the Good Faith Honest Belief Doctrine and correctly did so. An additional reason would be, without even addressing that, would be that it was always the plaintiff's burden of proof, because this was a trial, that it was always his burden of proof to show at a minimum that his use of FMLA leave was at a minimum a negative factor in the decision making process. This isn't summary judgment, so in case of a tie, the court couldn't decide which version was actually correct, but then plaintiff failed to meet his burden of proof. The second issue that I'd like to briefly address would be the plaintiff's new argument raised for the first time on appeal that somehow his use of profanity and asking his boss to take it outside was protected activity as a matter of law. I think the boss and the judge said it wasn't use of profanity. The boss said, I wouldn't mind it if he used the bad word. It was cussing me out. It was the particular use of the profanity being perceived as being directed an in-your-face type use of profanity rather than a generic profanity. The plaintiff raised for the first time on appeal that this is somehow protected activity as a matter of law. I think the cases that both parties have submitted show that that's not accurate, that context plaintiff admits or concedes in his reply brief that context is critical. Both parties have submitted numerous cases that show exceeding the scope of protected activity is highly factual determination. The trial court had the opportunity to wade through four days of testimony, was able to observe both of the witnesses next to each other. He was able to go through and process what is and was not protected activity and what unreasonably exceeded the scope of protected activity. The plaintiff in his reply brief for the first time argued that it was findings toward the purposes of the FMLA Act. I'd submit to you that it would be bad public policy to adopt the position that the plaintiff has asserted, that this particular use of protected profanity, asking your boss to take it outside was respected as a matter of law. To hold that swearing and asking your boss to step it outside is, as a matter of law, protected would end up encouraging that sort of behavior as an absolute immunity. When you talk about swearing, it's hard to discuss this without just quoting these people. The judge, if they said I fired the guy for using bad language, then I'd have real trouble with it because everyone is, it's implausible that they'd fire a guy for using bad language in this kind of employment context. But the boss says, well, the judge writes, while Ritter conceded that had he understood plaintiff to say, the fuck you're not, he would not have had a problem with that language. It is clear that Ritter was upset due to his perception, which I find credible, that Denny directed this comment at Ritter. And then you go up a little higher. Ritter, whether it was right or wrong, thought that Denny had said, fuck you, rather than the fuck you're not. Big difference. So I don't want you to lead us to say anytime somebody uses profanity in a workplace, they can be fired. I'm sorry, Your Honor. I certainly didn't mean to leave you with that impression. I was trying to be delicate with you using the language in court. Well, my apologies. No, it was about the particular use of profanity in this context. The witness, Ritter, admitted on the stand that he would not have been offended had it been, the fuck you're not harassing me. He was upset by, and it's a causation issue, which was supported by a finding of fact in the record based on credibility determinations by the public. Basically, it's the subordination rather than the bad language. That's right. I wonder why just, you know, an employee comes in and he's got proof that he's got medical problems and he wants family leave. And all of a sudden the employer, your client, makes a big federal case out of the whole thing. I can't understand why. Why didn't you just let him leave? Well, Your Honor, that's a different issue. That's a different issue. It may be a different issue, but could you answer my question? I mean, here's the fellow. Undoubtedly, undoubtedly medically was needed leave. And there's no question about that. And then all of a sudden we get into this big fight between the supervisor and the employee on a big federal case in the federal courthouse and the whole thing. It's just normal way that there's employer-employee relationship should be handled. Well, Your Honor, I would. May I respond to the question after that time? Well, Your Honor, there was a disputed issue about the need for his requesting leave. It was a Fourth of July. It was a Sunday. His leave had only been pre-approved for going to see a chiropractor, neither of which was going to be happening on the Fourth of July. There was a legitimate dispute over his entitlement to leave at that time. Thank you, counsel. Thank you. Thank you, Your Honors. Let me address just Judge Graber's question. With respect to the OFLA claim, because it was dismissed at the summary judgment stage, we do not know what test would have applied. For example, there's this good faith doctrine. Don't know if that applies in Oregon. It was never explored. But the factual findings that were made after trial, we have to presume would be the same factual findings. And if they're not clearly erroneous, don't they do away with your claim under even the most lenient test? In other words, if the finder of fact, having heard the witnesses says, he were fired for insubordination and not for asking for leave, then I don't understand how he still has a live claim under Oregon law either. I don't think it's a given that under Oregon law, the close nexus between the subject of the argument and the words that the railroad said, this plaintiff couldn't use. Really, that's all we're talking about. There's no dispute that he was wrongfully denied leave in the first place and that they were arguing about that and that the railroad continued, the defendant continued to deny the leave. So the only question is the extent to which the plaintiff or the defendant's choice of words that the plaintiff was not allowed to use was allowed or whether they could visit consequences under Oregon law against this plaintiff. So I think there are different tests. I mean, we didn't have enough time to discuss more fully how that operates in this case, or at least fully as I'd like, but I don't think it's clear under Oregon law. This is close to a case, in my opinion, of first impression under federal law. It's certainly a case of first impression under Oregon law. And I don't know that you can say today that the Oregon courts would conclude that the nature of the subject of the dispute had to be taken, was by law a matter that essentially trumped the defendant's rules about what words you could or could not use in the course of the dispute. Thank you, counsel. Thank you very much, Your Honor. Denny v. Union Pacific is submitted.
judges: Ferguson, Kleinfeld, Graber